IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DAVID NIELS HANSEN, | |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | Case Number 1:21-cv-00051-CMR **Magistrate Judge Cecilia M. Romero** |
| Defendant, | |

**MEMORANDUM DECISION AND ORDER**

This matter is referred to the undersigned by consent of the parties under 28 U.S.C. § 636(c) (ECF 12). Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner) denying his claims for Social Security disability benefits under Title II of the Social Security Act (Act) and supplemental security income under Title XVI of the Act (ECF 20). After careful review of the record (ECF 17), the parties' briefs (ECF 20, 24, 25), and arguments presented at a hearing held on June 14, 2022 (ECF 30), the undersigned concludes that the Commissioner committed reversible error. For the reasons stated on the record at the hearing, and as outlined below, the court REVERSES the Commissioner's decision and REMANDS this action for further administrative proceedings consistent with this decision.

1

# BACKGROUND

On March 13, 2018, David Niels Hansen (Plaintiff), applied for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income, alleging disability beginning March 2, 2017, due to attention deficit hyperactivity disorder (ADHD), arthritis, fibromyalgia, depression, anxiety, bi-polar disorder, insomnia, and paranoia (Administrative Transcript (Tr.) 122–23, 140–41). Plaintiff's claims were initially denied on August 2, 2018, and denied on reconsideration on November 5, 2018 (Tr. 121, 139). After a hearing (AR 78–120) held before Administrative Law Judge Gerald Bruce (ALJ) on January 30, 2020, the ALJ issued an unfavorable decision dated February 20, 2020 (Tr. 10–23).

In his decision, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 2, 2017, the alleged onset date (Tr. 12–13). He also determined that Plaintiff had the following severe impairments: degenerative disc disease, fibromyalgia, obesity, depression, anxiety, and ADHD, none of which met or medically equaled the severity of a listed impairment (Tr. 13–14). The ALJ determined Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 CFR § 404.1567(b) and § 416.967(b) except

> he can frequently climb ramps and stairs. He can occasionally climb ladders and scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He can occasionally be exposed to pulmonary irritants. He has the ability to understand, remember, and carry out complex tasks. He can perform goal-oriented but not assembly line paced work. He can occasionally interact with co-workers, supervisors, and the general public.

(Tr. 15). The ALJ concluded Plaintiff was unable to perform past relevant work (Tr. 21). However, Plaintiff could perform other work in the national economy such as garment sorter, laundry folder,

2

and inspector/hand packager (Tr. 22). The ALJ found Plaintiff not disabled (Tr. 23).

On February 5, 2021, the Appeals Council denied review, making the ALJ's decision the final agency decision (Tr. 1). This appeal followed. This Court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

## LEGAL STANDARDS

The scope of the court's review of the Commissioner's final decision is specific and narrow. As the Supreme court recently reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id*. at 1154. Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this deferential standard, this court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *E.g.*, *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). The doctrine of harmless error could also apply in the "right exceptional circumstance," when "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

## DISCUSSION

In determining whether a claimant qualifies as disabled, the Commissioner employs a five-part sequential evaluation. 20 C.F.R. § 404.1520(a)(4). The ALJ's decision adequately summarizes the five-part sequential evaluation process. A claimant's RFC reflects the ability to do physical,

3

mental, and other work activities on a sustained basis despite limitations from the claimant's impairments. 20 C.F.R. § 404.1545. The claimant has the initial burden of establishing the disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

Plaintiff's opening brief alleges that the ALJ's RFC determination is not supported by substantial evidence and is the product of legal error because the ALJ failed to properly evaluate the opinion of primary care physician, David Nelson, D.O. The Attorney for the Commissioner argues that the ALJ's RFC determination is supported by substantial evidence and that the ALJ properly rejected Dr. David Nelson's various functional opinions.

On January 18, 2017, the SSA adopted new rules which, for claims filed after March 27, 2017, modify the rules for evaluating medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,869 (Jan. 18, 2017). As this claim was filed March 13, 2018 (Tr. 122–23, 140–41), the new rules apply here. Factors to be considered when evaluating medical opinion evidence include: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations require the ALJ to explain how the supportability and consistency factors were considered in the determination or decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still

4

"articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1); *see also Lovato v. Saul*, No. 1:20-CV-00187-KRS, 2021 WL 2894733, at *5 (D. N.M. July 9, 2021) (remanding based on ALJ's failure to satisfy the regulations' "unambiguous articulation requirements" as to the persuasiveness of medical opinions).

### A. Limited Consideration of Dr. David Nelson's Treatment Records[1]

The ALJ in this case considered a variety of medical records. This appeal centers around the ALJ's consideration of Dr. David Nelson. Dr. David Nelson is Plaintiff's primary care provider.[2] Dr. David Nelson and Plaintiff had a multi-year relationship of treatment. While the record provided to the ALJ includes many years of records from Dr. David Nelson, the ALJ focused on a few pages from several years of records. The records the ALJ looked to were a mental capacity assessment and a physical capacity assessment (Tr. 524–29) that occurred in 2018.

On September 19, 2018, Dr. David Nelson completed a mental capacity assessment (Tr. 524–27). Dr. David Nelson opined that Plaintiff had marked limitations in his ability to follow one- or two-step oral instructions to carry out tasks, in his ability to recognize a mistake and correct it or identify and solve problems, in his ability to sequence multi-step activities, and in his ability to use reason and judgment to make work-related decisions (Tr. 525). Dr. David Nelson opined

---

[1] The court ruled form the bench after hearing arguments in this case and directed Plaintiff's counsel to provide a proposed order. The original proposed order included some findings and conclusions beyond the court's narrow bench ruling. The present written order is edited to align with the court's bench ruling.

[2] There are two Dr. Nelson's in this case: Dr. David Nelson and Dr. Joseph Nelson. The only opinion at issue is that of Dr. David Nelson.

that Plaintiff had extreme limitations in his ability to initiate and perform a task he knew how to do, in his ability to ignore or avoid distractions while working, in his ability to work close to or in proximity to others without interrupting or distracting them, and in his ability to sustain an ordinary routine and regular attendance at work (Tr. 526). Dr. David Nelson further opined that Plaintiff had marked limitations in his ability to work at an appropriate and consistent pace or complete tasks in a timely manner, and in his ability to work a full day without needing more than the allotted number or length of rest periods during the day (Tr. 526). Dr. David Nelson opined Plaintiff had extreme limitations in his ability to adapt to changes, in his ability to manage psychologically based symptoms, and in his ability to distinguish between acceptable and unacceptable work performance; and Plaintiff had marked limitations in his ability to set realistic goals, and in his ability to make plans independently of others; and moderate limitations in his ability to be aware of normal hazards and take appropriate precautions (Tr. 526). Dr. David Nelson also opined that Plaintiff had extreme limitations in his ability to handle conflicts with others, in his ability to respond to requests, suggestions, criticism, correction, and challenges, and in his ability to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness; and Plaintiff had marked limitations in his ability to cooperate with others or ask for help when needed and in his ability to understand and respond to social cutes (Tr. 527).

On September 19, 2018, Dr. David Nelson also completed a physical assessment (Tr. 528–29). Dr. David Nelson diagnosed Plaintiff with bipolar disorder, depression, fibromyalgia, and ADD (Tr. 528). He opined that Plaintiff's symptoms were severe enough to constantly interfere with the attention and concentration he would need to perform simple work-related tasks (Tr. 528).

Plaintiff experienced excessive sweating and shaking as medication side-effects (Tr. 528). He would need to recline or lie down in excess of normal breaks (Tr. 528). Plaintiff could walk only three or four blocks before experiencing pain or fatigue (Tr. 528). Plaintiff could sit a total of four hours and stand or walk a total of four hours in an eight-hour day but would need to take at least three unscheduled breaks lasting between ten and fifteen minutes (Tr. 528). Plaintiff could frequently lift up to ten pounds, and occasionally lift or carry up to twenty pounds (Tr. 528). Plaintiff could use his hands fifty percent of the day, his fingers sixty percent of the day, and his arms thirty percent of the day (Tr. 528). Dr. David. Nelson opined Plaintiff would be absent more than four times per month due Plaintiff's impairments or need for treatment (Tr. 528).

      The ALJ rejected those opinions, contending that they were not well supported with an explanation or rationale and because they were presented in a checkbox form (Tr. 20). He contended that the opinions were not supported by Dr. David Nelson's own treatment notes, citing to a single visit during which Plaintiff presented with a depressed mood and affect, but was otherwise cooperative with intact cognitive function, clear speech, and good eye contact (Tr. 20). He contended that Dr. David Nelson's own notes showed unremarkable physical examination findings (Tr. 20). The ALJ contended that Dr. David Nelson's opinions were inconsistent with the examination findings of Dr. Corgiat and the opinions of two non-examining state agency consultants (Tr. 20). The two non-examining state agency consultants were the only medical sources that the ALJ found to be persuasive, and he found Dr. Corgiat to be partially persuasive. (Tr. 19–20). The ALJ found all other providers (including Dr. David Nelson) either nonpersuasive or provided no analysis of persausive value.

As noted above, Dr. David Nelson is Plaintiff's primary care provider and they had a multi-year relationship of treatment. The ALJ's discussion of Dr. David Nelson Nelson's opinions comprised a few short paragraphs wherein the ALJ pointed only to a few pages of several years' worth of records. The ALJ included no discussion of the long primary care relationship with the Plaintiff or the doctor's familiarity with other diagnostic determinations, other factors and information acquired in their treatment relationship, and other treatments that were part of Plaintiff's care. Many of Dr. David Nelson's treatment records consistently report chronic pain and attempts to manage that pain with medications and other treatments. "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). "The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). Rather, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)). In this case, the ALJ does appear to have downplayed certain evidence in this case, picking and choosing evidence favorable to a nondisability finding, from just several pages of a much longer record.

### B. Inadequate Discussion of Consistency and Supportability

The Court understands the law prohibits a reweighing of the evidence. However, here the court finds that the ALJ's application of the five-factor test regarding the primary care provider's medical opinions, 20 C.F.R. § 404.1520c(c), was inadequate. While the ALJ may not have to look

8

at all five factors, and consistency is a heavily weighted factor, the written analysis by the ALJ is too sparse to support the substantial evidence standard. The analysis in *Simmons v. Colvin*, 635 F. App'x 512, 515 (10th Cir. 2015), is instructive, where a check-the-box medical opinion can be persuasive or unpersuasive, depending on the underlying treatment records. In this case there are several years of treatment records, many of which indicate chronic pain and limited functionality. The ALJ appears to have found the check-the-box form used by Dr. David Nelson on September 18, 2018 to be unpersuasive (Tr. 20) but did not address the underlying treatment records beyond the few pages the ALJ discussed.

In finding Dr. David Nelson's opinion inconsistent with his prior treatment record, the ALJ relied on only several pages of a multi-year record, which, as noted above, does appear to be downplaying or disregarding the other information in the record. As discussed at the hearing, the response brief of the Commissioner attempts to provide a consistency analysis. However, the ALJ bore the burden to provide that analysis in its decision, not counsel on appeal. A more fulsome evaluation of Dr. David Nelson's medical opinion in relation to the supporting treatment history in this case is warranted.

### C. Fibromyalgia Commonly Lacks Objective Symptoms

Consideration of underlying treatment records is particularly important in cases of fibromyalgia, in which patients generally appear normal and which present special challenges in the social security context as discussed by the Tenth Circuit. *Moore v. Barnhart*, 114 F. App'x 983, 990–92 (10th Cir. 2004) (discussing the misperception of the nature of fibromyalgia when the ALJ relies exclusively on "clinical signs or laboratory findings"); *Brown v. Barnhart*, 182 F.

App'x 771, 773–74 & n.1 (10th Cir. 2006) ("What makes fibromyalgia difficult to analyze in the social security disability context is the lack of objective symptoms."). There is sufficient case law regarding fibromyalgia, and the difficulty of diagnosing the impacts of that condition with objective evidence, to further diminish the ALJ's findings in this case where chronic pain from fibromyalgia is at issue and reported in the underlying treatment records. This is a more difficult area of social security litigation due to the common lack of objective symptoms. *Moore*, 114 F. App'x at 990–92; *Brown*, 182 F. App'x at 773 n.1; Evaluation of Fibromyalgia, 77 Fed. Reg. 43, 640 (July 25, 2012).

## CONCLUSION AND ORDER

For the reasons stated at the Hearing, and as outlined above, the Commissioner's decision is REVERSED, and this matter is REMANDED for further administrative proceedings consistent with this Memorandum Decision and Order.

DATED this 10 August 2022.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah